CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------- X

HELEN LITTLE &
WILLIAM E. LITTLE, JR.,

   PETITIONERS-LANDLORDS,
   Petitioners-Landlords,

   -against-

FATIM THIAM &
MAHMOUD THIAM

   RESPONDENTS-TENANTS

------------------------------------------------------------------- X

Nonpymnt
**PETITION FOR HOLDOVER**

Index No: 17N052096

L&T:

PETITIONER'S COUNSEL'S ADDRESS:

WEI LAW GROUP LLP
ONE WORLD TRADE CENTER, STE 8500
NEW YORK, NY 10007
ATTN: ERIC S. WEI, ESQ.

HON.

THE PETITIONS HEREBY SHOW THAT:

1. Petitioners HELEN LITTLE & WILIAM E LITTLE JR. are the owners of the premises.

2. Respondents FATIM THIAM & MAHMOUD THIAM are the tenants of the premises and entered into possession by written rental agreement made on or about July 15, 2013, between Respondents and Petitioners. See **Exhibit "A"**.

3. The term of the aforementioned lease ended on or about July 14, 2014.

4. The Respondents promised to pay $29,700.00 rent each month payable on the 1st day of the month.

4. No new lease agreement was entered into by or between the Respondents and Petitioners.

5. Respondent's failure to surrender possession of the premises after the lease term has expired, confirm that the tenancy has not been converted to a periodic tenancy by the tenant's continued occupancy with the landlord's consent and acceptance of rent.

6. On or about September 27, 2016, counsel for Petitioners personally served Respondents with a 30-day Notice to Quit. See **Exhibit "B"**.

7. Proof of Service of the 30-day notice to quit is affixed hereto as **Exhibit "C"**.

8.      The premises are described as all rooms in units 16B and Studio 09 located at 170 East End Avenue, New York, NY 10128, which is located in the jurisdiction of this Court, County of New York.

9.      As memorialized in the correspondence between Respondent and counsel dated September 13, 2016, Respondents owed $153,520 in past due rent as of October 1, 2016. See **Exhibit "D"**.

10.     As memorialized in the correspondence between Respondent and counsel dated December 18, 2016, Respondent admits that service of the 30-day Notice to Quit had been personally and properly served on Respondent on or about September 27, 2016. Moreover, Respondent acknowledged that the period provided by the 30-day Notice to Quit lapsed on or about October 27, 2016. See **Exhibit "E"**.

11.     In the same aforementioned correspondence, Respondents acknowledged and agreed that the rent past due and owing was $186,190 as of November 18, 2016. See **Exhibit "E"**.

12.     Respondents have not paid, and the total rent owed is $168,860.

13.     Wherefore, judgement against Respondents and in favor of Petitioners, in the amount of $168,860, plus rent of $29,700 for the month of January 2017, along with interest from December 29, 2016, is respectfully sought.

14.     Respondents continue in possession of the premises without petitioner's permission and after the lapse of the 30-day Notice to Quit.

15.     The premises is not rent regulated because the premises were constructed and sold as market rate condo units pursuant to an Offering Plan submitted and registered with the New York Secretary of State.

16.     The Multiple Dwelling Registration Number for the premises is 142915.

17.     The managing agent for the premises are Rose Associates, Inc., 200 Madison Ave., 5th Floor, New York, NY 10016.

Petitioners request final judgment awarding possession of the premises to the Petitioners, issuance of a warrant to remove Respondents from possession, judgment for rent in arrears against Respondents, jointly and severally in the amount of $198,560, and costs and disbursements.

Dated: City of New York, County of New York
        The 29th day of December, 2016

ERIC S. WEI, ESQ.

AFFIRMATION

I, ERIC S. WEI, ESQ., an attorney admitted to the practice of law before the courts of the State of New York, and not a party to the above-entitled cause, affirm the forgoing to true except as to those matters which are alleged on information and belief, and as to them, believes them to be true.

ERIC S. WEI, ESQ.

# EXHIBIT A

A 103—Lease of a Condominium unit. 8-90

Prepared by Arnold Mandell, Esq.
°1987 by Julius Blumberg, Inc., NYC 10013

# LEASE OF A CONDOMINIUM UNIT _+ Studio 09_

The Landlord and Tenant agree to lease the Unit and Landlord's interest in the Common Elements located in the Condominium at: _170 East End Ave_ _Apt. 16B + Apt. studio_ (Premises)

LANDLORD: _Helen L. Hlo_
_William E. L. Hlo Jr._ Address
_1107 Fifth Ave_ _Apt. 3N_ for
_New York NY_ Notices

TENANT:
_Mrs. Fatus Thiam_
_170 East End Ave_
_apt. 16B_

Unit (and terrace, if any) _10128_     Garage space (if any) _New York NY 10128_
Bank

| Lease date _July 15_ 19 _12_ | Term | | Yearly Rent | S. |
|---|---|---|---|---|
| Broker* | beginning _July 15_ 19 _12_ | Monthly Rent | S _29,400.00_ |
| | ending _July 14_ 19 _14_ | Security | S. |
| | Tenant's Insurance S | Garage Fee | S |

Declarant of Condominium: _____ (Declarant)
Name of Condominium: _170 East End Avenue Condominium_ (Declaration)

### 1. Lease is subject and subordinate

This Lease is subject and subordinate to (A) the By-Laws, Rules and Regulations and Provisions of the Declaration Establishing a Plan for Condominium Ownership of the Premises and (B) Powers of Attorney granted to the Board of Managers, leases, agreements, mortgages, renewals, modifications, consolidations, replacements and extensions to which the Declaration or the Unit are presently or may in the future be subject. Tenant shall not perform any act, or fail to perform an act, if the performance or failure to perform would be a violation of or default in the Declaration or a document referred to in (B). Tenant shall not exercise any right or privilege under this Lease, the performance of which would be a default in or violation of the Declaration or a document referred to in subdivision (B). Tenant must promptly execute any certificate(s) that Landlord requests to show that this Lease is so subject and subordinate. Tenant authorizes Landlord to sign these certificate(s) for Tenant. Tenant acknowledges that Tenant has had the opportunity to read the Declaration of Condominium Ownership for the Condominium, including the By-Laws. Tenant agrees to observe and be bound by all the terms contained in it which apply to the occupant or user of the Unit or a user of Condominium common areas and facilities. Tenant agrees to observe all of the Rules and Regulations of the Association and Board of Managers.

### 2. Lender Changes

Landlord may borrow money from a lender who may request an agreement for changes in this Lease. Tenant shall sign the agreement if it does not change the Rent or the Term, and does not alter the Unit.

### 3. Use

The Unit must be used only as a private residence and for no other reason. Only a party signing this Lease and the spouse and children of that party may use the Unit.

### 4. Rent, added rent

A. The rent payment for each month must be made on the first day of that month at Landlord's address. Landlord need not give notice to pay the rent. Rent must be paid in full and no amount subtracted from it. The first month's rent is to be paid when Tenant signs this Lease. Tenant may be required to pay other charges to Landlord under the terms of this Lease. They are called "added rent". This added rent is payable as rent, together with the next monthly rent due. If Tenant fails to pay the added rent on time, Landlord shall have the same rights against Tenant as if Tenant failed to pay rent. Payment of rent in installments is for Tenant's convenience only. If Tenant defaults, Landlord may give notice to Tenant that Tenant may no longer pay rent in installments. The entire rent for the remaining part of the Term will then be due and payable.

B. This Lease and the obligation of Tenant to pay rent and perform all of the agreements on the part of Tenant to be performed shall not be affected, impaired or excused, nor shall there by any apportionment or abatement of rent for any reason including, but not limited to, damage to the Unit or inability to use the common elements.

### 5. Failure to give possession

Landlord shall not be liable for failure to give Tenant possession of the Unit on the beginning date of the Term. Rent shall be payable as of the beginning of the Term unless Landlord is unable to give possession. Rent shall then be payable as of the date possession is available. Landlord will notify Tenant as to the date possession is available. The ending date of the Term will not change.

### 6. Security

Tenant has given security to Landlord in the amount stated above. The security has been deposited in the Bank named above and delivery of this Lease is notice of the deposit. If the Bank is not named, Landlord will notify Tenant of the Bank's name and address in which the security is deposited.

If Tenant does not pay rent on time, Landlord may use the security to pay for rent past due. If Tenant fails to perform any other term in this Lease, Landlord may use the security for payment of money Landlord may spend, or damages Landlord suffers because of Tenant's failure. If the Landlord uses the security Tenant shall, upon notice from Landlord, send to Landlord an amount equal to the sum used by Landlord. At all times Landlord is to have the amount of security stated above.

If Tenant fully performs all terms of this Lease, pays rent on time and leaves the Unit in good condition on the last day of the Term, then Landlord will return the security being held.

If Landlord sells or leases the Unit, Landlord may give the security to the buyer or lessee. In that event Tenant will look only to the buyer or lessee for the return of the security. The security is for

*If no broker, insert "None."

Landlord's use as stated in this Section. Landlord may put the security in any place permitted by law. If the law states the security must bear interest, unless the security is used by Landlord as stated Landlord will give Tenant the interest less the sum Landlord is allowed to keep for expenses. If the law does not require security to bear interest, Tenant will not be entitled to it. Landlord need not give Tenant interest on the security if Tenant is not fully performing any term in this Lease.

### 7. Alterations

Tenant must obtain Landlord's prior written consent to install any panelling, flooring, "built in" decorations, partitions, railings or make alterations or to paint or wallpaper the Unit. Tenant must not change the plumbing, ventilating, air conditioning, electric or heating systems. If consent is given the alterations and installations shall become the property of Landlord when completed and paid for. They shall remain with and as part of the Unit at the end of the Term. Landlord has the right to demand that Tenant remove the alterations and installations before the end of the Term. The demand shall be by notice, given at least 15 days before the end of the Term. Tenant shall comply with the demand at Tenant's own cost. Landlord is not required to do or pay for any work unless stated in this Lease.

If a Mechanic's Lien is filed on the Unit or building for Tenant's failure to pay for alterations or installations in the Unit, Tenant must immediately pay or bond the amount stated in the Lien. Landlord may pay or bond the Lien immediately, if Tenant fails to do so within 20 days after Tenant is given notice about the Lien. Landlord's costs shall be added rent.

### 8. Repairs

Tenant must take good care of the Unit and all equipment and fixtures in it. Tenant must, at Tenant's cost make all repairs and replacements whenever the need results from Tenant's act or neglect. If Tenant fails to make a needed repair or replacement, Landlord may do it. Landlord's expense will be added rent. Subject to Tenant's obligations under this Lease, Landlord will require the Association (to the extent that the Association is obligated under the terms of the Declaration or other agreement) to maintain the unit, or repair any damage to it, except where caused in whole or in part by the act, failure to act, or negligence of Tenant, or Tenant's licensees, invitees, guests, contractors or agents. Tenant must give Landlord prompt notice of required repairs or replacements.

### 9. Fire, accident, defects, damage

Tenant must give Landlord prompt notice of fire, accident, damage or dangerous or defective condition. If the Unit can not be used because of fire or other casualty, Tenant is not required to pay rent for the time the Unit is unusable. If part of the Unit can not be used, Tenant must pay rent for the usable part. Landlord shall have the right to decide which part of the Unit is usable. Landlord need only arrange for the damaged structural parts of the Unit to be repaired. Landlord is not required to arrange for the repair or replacement of any equipment, fixtures, furnishings or decorations. Landlord is not responsible for delays due to settling insurance claims, obtaining estimates, labor and supply problems or any other cause not fully under Landlord's control.

If the fire or other casualty is caused by an act or neglect of Tenant or guest of Tenant, or at the time of the fire or casualty Tenant is in default in any term of this Lease, then all repairs will be

adjustment. The cost of the repairs will be added rent.

If there is more than minor damage to the Unit by fire or other casualty, Landlord may cancel this Lease within 30 days after that fire or casualty by giving notice. The Lease will end 30 days after Landlord's cancellation notice to Tenant. Tenant must deliver the Unit to Landlord on or before the cancellation date the notice and pay all rent due to the date of the fire or casualty. If the Lease is cancelled Landlord is not required to arrange for the repair of the Unit. The cancellation does not release Tenant of liability in connection with the fire or casualty. This Section, when permitted, is intended to replace the terms of applicable statutory law. Tenant has no right to cancel this Lease due to fire or casualty.

**10. Liability**

Landlord is not liable for loss, expense, or damage to any person or property, unless due to Landlord's negligence. Landlord is not liable to Tenant if anyone is not permitted or is refused entry into the Building.

Tenant must pay for damage suffered and money spent by Landlord relating to any claim arising from any act or neglect of Tenant. If an action is brought against Landlord arising from Tenant's act or neglect Tenant shall defend Landlord at Tenant's expense with an attorney of Landlord's choice.

Tenant is responsible for all acts of Tenant's family, employees, guests or invitees. Tenant must carry whatever property or liability insurance Landlord may require and will name Landlord as a party insured. The insurance shall be no less than a Tenant's Homeowners Insurance Policy in the minimum amount stated above. Tenant shall deliver a copy of the binder to Landlord prior to taking possession of the Unit.

**11. Entry by Landlord**

Landlord or parties authorized by Landlord may enter the Unit at reasonable hours to: repair, inspect, exterminate, install or work on systems and cause performance of other work that Landlord decides is necessary. At reasonable hours Landlord may show the Unit to possible buyers, lenders or tenants.

If Landlord enters the Unit, Landlord will try not to disturb Tenant. Landlord may cause to be kept in the Unit all equipment necessary to make repairs or alterations to the Unit or Building. Landlord is not responsible for disturbance or damage to Tenant because of work being performed on or equipment kept in the Unit. Landlord's or the Association's use of the Unit does not give Tenant a claim of eviction. Landlord or those authorized by Landlord may enter the Unit to get to any part of the Building.

Landlord has the right at any time to permit the following people into the Unit: (i) receiver, trustee, assignee for benefit of creditors; or (ii) sheriff, marshall or court officer; and (iii) any person from the fire, police, building, or sanitation departments or other state, city or federal government and (iv) the Association, Board of Managers and any other party permitted or authorized by the Declaration or Management Agreement covering the Unit or Condominium. Landlord has no responsibility for damage or loss as a result of those persons being in the Unit.

**12. Construction or demolition**

Construction or demolition may be performed in or near the Building. Even if it interferes with Tenant's ventilation, view or enjoyment of the Unit it shall not affect Tenant's obligations in this Lease.

**13. Assignment and sublease.**

Tenant must not assign this Lease or sublet all or part of the Unit or permit any other person to use the Unit. If Tenant does, Landlord has the right to cancel the Lease as stated in the Default section. Tenant must get Landlord's written permission each time Tenant wants to assign or sublet. Permission to assign or sublet is good only for that assignment or sublease. Tenant remains bound to the terms of this Lease after a permitted assignment or sublet even if Landlord accepts rent from the assignee or subtenant. The amount accepted will be credited toward rent due from Tenant. The assignee or subtenant does not become Landlord's tenant. Tenant is responsible for acts of any person in the Unit.

**14. Tenant's certificate**

Upon request by Landlord, Tenant shall sign a certificate stating the following: (1) This Lease is in full force and unchanged (or if changed, how it was changed); and (2) Landlord has fully performed all of the terms of this Lease and Tenant has no claim against Landlord; and (3) Tenant is fully performing all the terms of the Lease and will continue to do so; and (4) rent and added rent have been paid to date. The certificate will be addressed to the party Landlord chooses.

**15. Condemnation**

If all or a part of the Building or Unit is taken or condemned by a legal authority, Tenant on notice to Tenant, cancel the Term. If Landlord cancels, Tenant's rights shall end as of the date the authority takes title to the Unit or Building. The cancellation date must not be less than 30 days from the date of the Landlord's cancellation notice. On the cancellation date Tenant must deliver the Unit to Landlord together with all rent due to that date. The entire award for any taking including the portion for fixtures and equipment belongs to Landlord. Tenant gives Landlord any interest Tenant may have to any part of the award. Tenant shall make no claim for the value of the remaining part of the Term.

**16. Tenant's duty to obey laws and regulations**

Tenant must, at Tenant's expense, promptly comply with all laws, orders, rules, requests, and directions, of all governmental authorities, Landlord's insurers, Board of Fire Underwriters, or similar groups. Notices received by Tenant from any authority or group must be promptly delivered to Landlord. Tenant will not do anything which may increase Landlord's insurance premiums. If Tenant does, Tenant must pay the increase in premium as added rent.

If the Landlord wants to sell the Unit Landlord shall have the right to end this Lease by giving 30 days notice to Tenant. If Landlord gives Tenant that notice then the Lease will end and Tenant must leave the Unit at the end of the 30 days period in th notice.

**18. No liability for property**

Neither Landlord, the Association or Board of Managers i liable or responsible for (a) loss, theft, misappropriation or damage to the personal property, or (b) injury caused by the property or it use.

**19. Playground, pool, parking and recreation areas**

If there is a playground, pool, parking or recreation area, o other common areas, Landlord may give Tenant permission to use it. If Landlord gives permission. Tenant will use the area at Tenant' own risk and must pay all fees Landlord or the Association charges Landlord is not required to give Tenant permission.

**20. Terraces and balconies**

The Unit may have a terrace or balcony. The terms of this Lease apply to the terrace or balcony as if part of the Unit. The Landlord may make special rules for the terrace and balcony. Landlord will notify Tenant of such rules.

Tenant must keep the terrace or balcony clean and free from snow, ice, leaves and garbage and keep all screens and drains in good repair. No cooking is allowed on the terrace or balcony. Tenant may not keep plants, or install a fence or any addition on the terrace or balcony. If Tenant does, Landlord has the right to remove and store them at Tenant's expense.

**21. Correcting Tenant's defaults**

If Tenant fails to correct a default after notice from Landlord, Landlord may correct it at Tenant's expense. Landlord's cost to correct the default shall be added rent.

**22. Notices**

Any bill, statement or notice must be in writing. If to Tenant, it must be delivered or mailed to the Tenant at the Unit. If to Landlord it must be mailed to Landlord's address. It will be considered delivered on the day mailed or if not mailed, when left at the proper address. A notice must be sent by certified mail. Landlord must notify Tenant if Landlord's address is changed. The signature of all Tenants in the Unit are required on every notice by Tenant. Notice by Landlord to one named person shall be as though given to all those persons. Each party shall accept notices of the other.

**23. Tenant's default**

A. Landlord must give Tenant notice of default. The following are defaults and must be cured by Tenant within the time stated:
(1) Failure to pay rent or added rent on time, 3 days.
(2) Failure to move into the Unit within 15 days after the beginning date of the Term, 5 days.
(3) Issuance of a court order under which the Unit may be taken by another party, 5 days.
(4) Failure to perform any term in another lease between Landlord and Tenant (such as a garage lease), 5 days.
(5) Improper conduct by Tenant annoying other tenants, 3 days
(6) Failure to comply with any other term or Rule in the Lease, 5 days.

If Tenant fails to cure in the time stated, Landlord may cancel the Lease by giving Tenant a cancellation notice. The cancellation notice will state the date the Term will end which may be no less than 3 days after the date of the notice. On the cancellation date in the notice the Term of this lease shall end. Tenant must leave the Unit and give Landlord the keys on or before the cancellation date. Tenant continues to be responsible as stated in this Lease.

B. If Tenant's application for the Unit contains any misstatement of fact, Landlord may cancel this Lease. Cancellation shall be by cancellation notice as stated in Paragraph 23. A.

C. If (1) the Lease is cancelled; or (2) rent or added rent is not paid on time; or (3) Tenant vacates the Unit, Landlord may in addition to other remedies take any of the following steps: (a) enter the Unit and remove Tenant and any person or property, and (b) use eviction or other lawsuit method to take back the Unit.

D. If this Lease is cancelled, or Landlord takes back the Unit, the following takes place:
(1) Rent and added rent for the unexpired Term becomes due and payable. Tenant must also pay Landlord's expenses as stated in Paragraph 23. D(3).
(2) Landlord may re-rent the Unit and anything in it. The re-renting may be for any Term. Landlord may charge any rent or no rent and give allowances to the new tenant. Landlord may, at Tenant's expense, do any work Landlord feels needed to put the Unit in good repair and prepare it for renting. Tenant remains liable and is not released in any manner.
(3) Any rent received by Landlord for the re-renting shall be used first to pay Landlord's expenses and second to pay any amounts Tenant owes under this Lease. Landlord's expenses include the costs of getting possession and re-renting the Unit, including, but not only, reasonable legal fees, brokers fees, cleaning and repairing costs, decorating costs and advertising costs.
(4) From time to time Landlord may bring actions for damages. Delay or failure to bring an action shall not be a waiver of Landlord's rights. Tenant is not entitled to any excess of rents collected over the rent paid by Tenant to Landlord under this Lease.
(5) If Landlord re-rents the Unit combined with other space an adjustment will be made based on square footage. Money received by Landlord from the next tenant, other than the monthly rent, shall be considered as part of the rent paid to Landlord. Landlord is entitled to all of it.

Landlord has no duty to re-rent the Unit. If Landlord does re-rent, the fact that all or part of the next tenant's rent is not

collect the next tenant's rent. Tenant must continue to pay rent, damages losses and expenses without offset.

E. If Landlord takes possession of the Unit by Court order, or under the Lease, Tenant has no right to return to the Unit.

**24. Jury Trial and Counterclaim**

Landlord and Tenant agree not to use their right to a Trial by Jury in any action or proceeding brought by either against the other, for any matter concerning this Lease or the Unit. The giving up of the right to a Jury Trial is a serious matter. There are rules of law that protect that right and limit the type of action in which a Jury Trial may be given up. Tenant gives up any right to bring a counterclaim or set-off in any action by Landlord against Tenant on any matter directly or indirectly related to this Lease.

**25. Bankruptcy, insolvency**

If (1) Tenant assigns property for the benefit of creditors, (2) Tenant files a voluntary petition or an involuntary petition is filed against Tenant under any bankruptcy or insolvency law, or (3) a trustee or receiver of Tenant or Tenant's property is appointed, Landlord may give Tenant 30 days notice of cancellation of the Term of this Lease. If any of the above is not fully dismissed within the 30 days, the Term shall end as of the date stated in the notice. Tenant must continue to pay rent, damages, losses and expenses without offset.

**26. No Waiver**

Landlord's failure to enforce, or insist that Tenant comply with a term in this Lease is not a waiver of Landlord's rights. Acceptance of rent by Landlord is not a waiver of Landlord's rights. The rights and remedies of Landlord are separate and in addition to each other. The choice of one does not prevent Landlord from using another.

**27. Illegality**

If a term in this Lease is illegal that term will no longer apply. The rest of this Lease remains in full force.

**28. Representations, changes in Lease**

Tenant has read this Lease. All promises made by the Landlord are in this Lease. There are no others. This Lease may be changed only by an agreement in writing signed by and delivered to each party.

**29. Inability to perform**

If due to labor trouble, government order, lack of supply, Tenant's act or neglect or any other cause not fully within the Association's reasonable control, the Association, or Board of Managers is delayed or unable to carry out any of their respective obligations, requirements, promises or agreements, if any, this Lease shall not be ended or Tenant's obligations affected in any manner.

**30. Limit of recovery against Landlord**

Tenant is limited to Landlord's interest in the Unit for payment of a judgment or other court remedy against Landlord.

**31. End of Term**

At the end of the Term, Tenant must: leave the Unit clean and in good condition, subject to ordinary wear and tear; remove all of Tenant's property and all Tenant's installations and decorations; repair all damages to the Unit and Building caused by moving; and restore the Unit to its condition at the beginning of the Term. If the last day of the Term is on a Saturday, Sunday or State or Federal holiday the term shall end on the prior business day.

**32. Space "as is"**

Tenant has inspected the Unit and Building. Tenant states that they are in good order and repair and takes the Unit as is. Sizes of rooms stated in brochures or plans of the Building or Unit are approximate and subject to change. This Lease is not affected or Landlord liable if the brochure or plans do not show obstructions or are incorrect in any manner.

**33. Quiet enjoyment**

Subject to the terms of this Lease, as long as Tenant is not in default Tenant may peaceably and quietly have, hold, and enjoy the Unit for the Term.

**34. Landlord's consent**

If Tenant requires Landlord's consent to any act and such consent is not given, Tenant's only right is to ask the Court to force Landlord to give consent. Tenant agrees not to make any claim against Landlord for money or subtract any sum from the rent because such consent was not given.

**35. Lease binding on**

This Lease is binding on Landlord and Tenant and their heirs, distributees, executors, administrators, successors and lawful assigns.

**36. Landlord**

Landlord means the owner of the Unit. Landlord's obligations end when Landlord's interest in the Unit is transferred. Any acts Landlord may do may be performed by Landlord's agents.

**37. Broker**

If the name of a Broker appears in the box at the top of the first page of this Lease, Tenant states that this is the only Broker that showed the Unit to Tenant. If a Broker's name does not appear Tenant states that no agent or broker showed Tenant the Unit. Tenant will pay Landlord any money Landlord may spend if either statement is incorrect.

**38. Paragraph headings**

The paragraph headings are for convenience only.

**39. Rules**

Tenant must comply with these Rules. Notice of new or changed Rules will be given to Tenant. Landlord, the Association or Board of Managers need not enforce Rules against other tenant. Landlord is not liable to Tenant if another tenant violates these Rules. Tenant receives no rights under these Rules:

(1) The comfort or rights of other tenants must not be

(2) No one is allowed on the roof. Nothing may be placed on or attached to fire escapes, sills, windows or exterior walls of the Unit or in the hallway or public areas. Clothes, linens or rugs may not be aired or dried from the Unit or on terraces.

(3) Tenant must give the Landlord keys to all locks. Locks may not be changed or additional locks installed without Landlord's consent. Doors must be locked at all times. Windows must be locked when Tenant is out. All keys must be returned to Landlord at the end of the Term.

(4) Floors of the Unit must be covered by carpets or rugs. Waterbeds or furniture containing liquid are not allowed in the Unit.

(5) Dogs, cats or other animals or pets are not allowed in the Unit or Building. Feeding of birds or animals from the Unit, terraces or public areas is not permitted.

(6) Garbage disposal rules must be followed. Wash lines, vents and plumbing fixtures must be used for their intended purpose.

(7) Laundry machines, if any, are used at Tenant's risk and cost. Instructions must be followed. Landlord may stop their use at any time.

(8) Moving furniture, fixtures or equipment must be scheduled with Landlord. Tenant must not send Landlord's employees on personal errands.

(9) Improperly parked cars may be removed without notice at Tenant's cost.

(10) Tenant must not allow the cleaning of the windows or other part of the Unit or Building from the outside.

(11) Tenant shall conserve energy.

(12) Tenant may not operate manual elevators. Smoking or carrying lighted pipes, cigarettes or cigars is not permitted in elevators. Messengers and trade people must only use service elevators and service entrances.

(13) The entrances, halls and stairways may only be used to go to or leave the Unit.

(14) Professional tenants must not allow patients to wait in public areas.

(15) Inflammable or dangerous things may not be kept or used in the Unit.

(16) No tour of the Unit or Building may be conducted. Auctions or tag sales are not permitted in Units.

(17) Bicycles, scooters, skate boards or skates may not be kept or used in lobbies, halls or stairways. Carriages and sleds may not be kept in lobbies, halls or stairways.

**40. Appliances, etc., included in Lease**

The Lease includes only personal property itemized on the annexed schedule called the Personal Property schedule.

**41. Definitions**

a) "Association" means the Unit Owners Association and/or any organization, whether or not incorporated, whose membership is essentially limited to owners of units in the Condominium or in condominiums located in the vicinity.

b) Words defined in applicable statutes have the meanings therein set forth.

c) "Condominium" — See Heading.

d) "Unit" — See Heading.

e) "Board of Managers" — group of persons selected, authorized and directed to manage and operate condominium, as provided by the Condominium Act, and the Declaration.

f) "Building" — See Article 1.

g) "Common Charges" — each unit's share of the common expenses in accordance with its common interest in the common elements of the Condominium.

h) "Common Elements" — that which is described in the Declaration.

i) "Common Expenses" — the actual and estimated expenses of operating the Condominium and any reasonable reserve for such purposes, as found and determined by the Board of Managers plus all sums designated common expenses by or pursuant to the Condominium Act, or the declaration.

j) "Common Interest" — the proportionate, undivided interest each Unit-owner has in the common elements.

k) "Unit-owner — the person or persons owning 1 or more units in the condominium in fee simple.

**42. Increase in Common Charges**

A. Tenant shall pay to Landlord, as added rent, all increases in Common charges, Common Expenses and Association dues related to the Unit, which exceed those charges, expenses or dues payable on the date of this Lease.

B. Tenant shall pay to Landlord, as added rent, the Unit's Common Interest share of any increase in the Real Estate Taxes (including all equivalent, and/or use and/or supplemental taxes and taxes assessed against the Condominium as a substitute for Real Estate Taxes) above the Real Estate Taxes assessed or imposed against the Condominium (including but not limited to increases in assessed value or tax rate) for the fiscal tax year in effect on the commencement date of the term of this Lease.

**43. No Liability**

A. Landlord, the Board of Managers, the Association and their respective agents, contractors and employees, shall not be liable for, injury to any person, or for property damage sustained by Tenant, its licensees, invitees, guests, contractors and agents, or by any other person for any reason except for negligence of Landlord, the Board of Managers or the Association.

B. Tenant agrees to protect, indemnify and save harmless Landlord, the Board of Managers and the Association from all losses, costs, or damages suffered by reason of any act or other occurrence which causes injury to any person or property and is related in any way to the use of the Unit.

**44. Automobiles**

The use or storage of Tenant's or any other person's automobile whether or not parked or being driven in or about the Building

person's automobile or other property given to the custody of any employee for any reason whatsoever, that employee is considered the agent of Tenant or such other person and not of Landlord, the Condominium, the Board of Managers or the Association and none of them shall be liable to Tenant or to any other person for the acts or omission of any employee or for the loss of or damage to the automobile or any of its contents.

Any vehicle or personal property belonging to Tenant, which in the opinion of Landlord, the Association or Board of Managers is considered abandoned, shall be removed by Tenant within 1 day after delivery of written notice to Tenant. If Tenant does not remove it, Landlord or the Association may remove the property from the area at Tenant's cost.

**45. Garage Space**
If a garage space is included in this Lease the fee that Tenant must pay Landlord appears in the box at the top of the first page of this Lease. It is payable as added rent. The number of the garage space will also appear in the box. If a garage space number does not appear Tenant states that no garage space is leased to Tenant.

**46. Voting**
This Lease relates solely to the use and occupancy of the Unit and as specifically stated. This Lease does not include the transfer of,

**47. No Affirmative Obligations of Landlord**
Landlord is not obligated to provide or render any services whatsoever to the Tenant or perform any affirmative obligations under the terms of this Lease. Landlord is not liable for damages or otherwise in the event Tenant suffers them as a result of any act committed or omitted to be performed by the Association, Board of Managers, or any other party. Landlord shall not be liable to Tenant, its successors, assigns or subtenants with respect to any of the affirmative obligations to be performed by any third party including the Association or Board of Managers under the Declaration and Landlord is released from liability. Tenant must continue to pay all rent and added rent as required under the terms of this Lease in spite of any failure of performance. None of the terms of this Lease shall in any way be affected as a result of that failure. Landlord will use its reasonable efforts (provided at no expense to Landlord) in demanding the performance, by the party obligated, of its obligations under the applicable agreement including any obligation to provide services. Tenant agrees to indemnify and save Landlord harmless from and against any and all claims, liabilities or demands arising from the Declaration or other agreement related to any act, omission or negligence of Tenant.

Rider   Additional terms on _____ page(s) initialed at the end by the parties is attached and made a part of this Lease.

Signatures, effective date   Landlord and Tenant have signed this Lease as of the above date. It is effective when Landlord delivers to Tenant a copy signed by all parties.

LANDLORD: _____   TENANT: _____

WITNESS _____

GUARANTY OF PAYMENT
Guarantor and address   Date of Guaranty _____

1. Reason for guaranty   I know that the Landlord would not rent the Unit to the Tenant unless I guarantee Tenant's performance. I have also requested the Landlord to enter into the Lease with the Tenant. I have a substantial interest in making sure that the Landlord rents the Premises to the Tenant.
2. Guaranty   I guaranty the full performance of the Lease by the Tenant. This Guaranty is absolute and without any condition. It includes, but is not limited to, the payment of rent and other money charges.
3. Changes in Lease have no effect   This Guaranty will not be affected by any change in the Lease, whatsoever. This includes, but is not limited to, any extension of time or renewals. The Guaranty will bind me even if I am not a party to these changes.
4. Waive of Notice   I do not have to be informed about any default by Tenant. I waive notice of nonpayment or other default.
5. Performance   If the Tenant defaults, the Landlord may require me to perform without first demanding that the Tenant perform.
6. Waiver of jury trial   I give up my right to trial by jury in any claim related to the Lease or this Guaranty.
7. Changes   This Guaranty can be changed only by written agreement signed by all parties to the Lease and this Guaranty.

Signatures   GUARANTOR: _____
WITNESS: _____   Guarantor's address: _____

## 170 EAST END AVENUE CONDOMINIUM

### RIDER TO LEASE

Dated: _April 22 2013_ (the "Lease")

between

_Helen Little_    _William E Little_ ("Landlord")

_Fatim Thiam & Mahmoud Thiam_ ("Tenant")

**The parties hereto agree as follows:**

1.    This rider is executed simultaneously with the Lease to which it is annexed. If there are any inconsistencies between the Rider and the Lease, this Rider shall be paramount and controlling.

2.    Any rule of construction or interpretation that purports to require that the language in this Rider be construed or interpreted against the Condominium will not be considered in the construction or interpretation of this Rider or any of their provisions.

3.    The parties acknowledge that Unit is located in the **170 East End Avenue** (The "Condominium") and this lease is subject and subordinate to the Declaration, By-Laws and Rules and Regulations of the Condominium (the "Condominium Documents"). Tenant agrees that it will observe and perform all of the terms, covenants and conditions of the Condominium Documents and will not cause or permit any default thereunder to the extent applicable to a tenant or occupant of the Unit.

4.    In the event Landlord is in default in payment of common charges or any other charges (e.g. electric) owing to the Condominium for a period of thirty (30) days following the date when these charges are due, and for so long as the Landlord is in default, all rent and any other sums which may become due from Tenant to Landlord under the Lease or otherwise, will, upon notice from the Condominium, be paid by Tenant directly to the Condominium.

5.    Any payments by Tenant to the Condominium shall constitute a discharge of obligations of Tenant to Landlord to the extent of the amount so paid.

6.    The Condominium may take and apply all or part of payments it receives from Tenant, to amounts owed by Landlord to Condominium including but not limited to common charges, late fees, interest and attorney's fees. Thereafter, the Condominium shall remit to Landlord the remainder, if any, of payments received by Condominium from tenant.

7.    Landlord acknowledges and agrees to the Condominium's right as hereinabove described to demand, receive and enforce payment from Tenant, and to bring suit to recover all rents or other sums payable to Landlord under the Lease, all of the foregoing at Landlord's expense.

8.     Nothing contained in the Lease shall be deemed to constitute a release of Landlord from any of his/her obligations as unit owner under the Condominium Documents. Landlord shall remain fully liable for the performance of all of the obligations of the unit owner under the Condominium Documents and shall be fully responsible and liable to the Condominium for all acts or omissions of Tenant should any such acts or omissions of Tenant violate any of the obligations of the Landlord under the Condominium Documents. The parties shall be jointly and severally liable to the Condominium for all expenses of the Condominium, including attorney's fees, in enforcing the obligations of either party hereunder.

9.     The parties acknowledge that this rider is executed for the benefit of the Condominium, and that the Condominium shall be deemed a third-party beneficiary of the provisions hereof. In case of any conflict between other provisions of the Lease and those contained in this Rider, the provisions of this Rider shall control.

10.    As used in this Rider, "Landlord" refers to the owner of Unit *16B, #* at the **170 East End Avenue Condominium, 170 East End Avenue, New York, NY 10128** "Tenant" refers to the person or persons leasing Unit *16B, #2* from *Studio 09* Landlord; and "Condominium Documents" refer to the Declaration, By-Laws or Rules and Regulations, the Tenant shall be permitted to use the amenities located in the Building, subject to the policies and procedures governing the use of same, including, without limitation, the imposition of any fees, if applicable.

11.    Any rule of construction or interpretation that purports to require that the language in this Lease be construed or interpreted against the drafter will not be considered in the construction or interpretation of this Lease or any of its provisions, it being agreed that this Lease was negotiated by both parties with the aide of counsel.

12.    Tenant acknowledges and understands that the Landlord has no obligation to supply or liability in connection with, utilities including, without limitation, gas and electricity, in or to the Unit. Tenant shall be solely responsible for arranging and paying for utilities including payment of electric sub-metering charges, if applicable.

13.    Tenant agrees and understands that Owner is entitled to implement such procedures, rules and regulations as, in its discretion, Owner deems appropriate in order to identify and/or screen all Tenants or other would-be entrants into the building and to inspect all packages that such persons wish to bring into the building. In the event the Unit is or becomes occupied by any person other than the Tenant, including but not limited to, family members and/or roommates of Tenant, with the exception of temporary guests, it shall be a substantial obligation of the tenancy and this Lese (in addition to any other independent obligations under law) that Tenant so notify Owner within thirty **(30)** days of such person taking occupancy and, thereafter, providing to Owner such reasonable information as Owner may request of Tenant regarding each occupant, including, but not limited to, such type of information as Owner requested of Tenant when Tenant applied for permission to initially rent the Unit.  Tenant's

failure to provide such notification to Owner and to provide such information upon request of Owner shall constitute a material breach of this Lease.

14.    The lease to which this rider is attached may not be modified, amended, extended or assigned without the prior consent, in writing, of the Board of Managers (the "Board") and that the tenant shall not assign his interest in such lease, or sublet the demised premises or any part thereof without the prior consent in writing of the Board and that the Board shall have the power to terminate such lease and/or to bring summary proceedings to evict the tenant in the name of the landlord, in the event of (i) a default by the tenant in the performance of its obligations under the lease or (ii) a foreclosure of a lien.

_____          _____
Owner Signature                          Owner Signature

_____          _____
Tenant Signature                         Tenant Signature

**If more than one Unit owner or more than one Tenant, both must sign.**

# EXHIBIT B

**VIA HAND DELIVERY**
Mr. Mahmoud Thiam
Mrs. Fatim Thiam
170 East End Avenue, Apt 16B
New York, NY 10128

## THIRTY DAY NOTICE TO QUIT

**PLEASE TAKE NOTICE** that the owners/landlords of the premises located at 170 East End Avenue, New York, NY 10128 elects to terminate your month-to-month tenancy of Unit 16B and Studio 09 (the "Property").

**PLEASE TAKE FURTHER NOTICE** that you must vacate and surrender the Property on or before October 27, 2016 (the "Termination Date"), said date being at least thirty (30) days from the date of service of this notice upon you. If you fail to vacate the Property on or before the Termination Date, the undersigned counsel for owners/landlords will commence a summary eviction proceeding against you to recover possession of the Property.

**PLEASE TAKE FURTHER NOTICE** that you remain responsible for the payment of rent through the Termination Date. If you fail to vacate the Property on or before the Termination Date, the owners/landlords will also demand that you pay the value of your use and occupancy of the Property from the Termination Date until you vacate the Property.

Dated: City of New York, County of New York
September 27, 2016

By:_____

ERIC S. WEI, ESQ.
ATTORNEY FOR OWNERS/LANDLORDS
WEI LAW GROUP LLP
ONE WORLD TRADE CENTER, STE 8500
NEW YORK, NY 10007
888-835-0006

# EXHIBIT C

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------- X

HELEN LITTLE &
WILLIAM E. LITTLE, JR.,

        PETITIONERS-LANDLORDS,
        Petitioners-Landlords,

        -against-

FATIM THIAM &
MAHMOUD THIAM

        RESPONDENTS-TENANTS

-------------------------------------------------------------------- X

**AFFIRMATION OF SERVICE**

Index No:

L&T:

PETITIONER'S COUNSEL'S ADDRESS:

WEI LAW GROUP LLP
ONE WORLD TRADE CENTER, STE 8500
NEW YORK, NY 10007
ATTN: ERIC S. WEI, ESQ.

HON.

I, ERIC S. WEI, an attorney admitted to the practice of law before the courts of the State of New York,

and not a party to the above-entitled cause, affirm the following to be true.

    1.) I personally served the required 30-day notice to quit on Respondent Mr. Thiam on September

    27, 2016.

    2.) Service was effectuated at the Mark Hotel located at 25 E 77th St, New York, NY 10075.

Dated: City of New York, County of New York
       September 27, 2016

                          ERIC S. WEI, ESQ.

# EXHIBIT D



Eric Wei <ewei@weillp.com>

## Fwd: Status?

Eric Wei <ewei@weillp.com>                                                        Tue, Sep 13, 2016 at 11:53 AM
To: Mahmoud Thiam <mahmoud.thiam@gmail.com>
Bcc: Will Little <littlessumoe@gmail.com>, Helen Y Little <helenylittle@gmail.com>

Dear Mr. Thiam:

In response to your inquiry regarding the amounts you still owe my clients, please see your email below dated May 17, 2016, wherein you acknowledge that you still owed $128,000 after the $85,000 payment on May 19, 2016. This remaining $128,000 was for rent (and penalties) due and owing up to May 2016.

From May to September, you have incurred an additional $148,000 in rent and $14,850 in penalties. This equates to a total due of $290,850 even after your $85,000 payment is accounted for.

You have thus far paid $170,000 towards this $290,850 balance and therefore still owe an additional $120,850, which will become $150,550 as of October 1, 2016, assuming that rent is paid on time. If it is not, it will become $153,520 due to the imposition of the agreed upon penalty for late payments.

I trust that the above serves to clarify any misunderstanding as to the monies you still owe my clients. Unless I hear from you to the contrary, I will assume the aforementioned is accurate and that you are in agreement with same.

Very truly yours,

Eric S. Wei
Partner | Wei Group LLP
One World Trade Center, Ste 8500
New York, New York 10007-0103
T 212-248-0808 | F 212-248-0475

---------- Forwarded message ----------
From: Mahmoud.thiam@gmail.com <mahmoud.thiam@gmail.com>
Date: Tue, May 17, 2016 at 5:19 PM
Subject: Re: Status?
To: Eric Wei <ewei@weillp.com>

Dear Mr. Wei

Sorry for the difficulties in reaching me. I have had a few days of hard travel. I only realized 2 days ago that their had been a problem with the bank And have been trying to speed resolution.

I apologize for that. To cut a long story short the company registration of the entity sending the wire expired and pending presentation of the renewal

12/29/2016                                             WEI GROUP LLP Mail - Fwd: Status?

Docs the banks in dubai can restrict transactions on offshore accounts
The documents were faxed to the banker. The banker was out on paternity leave and failed to forward it to the relevant department. I am reseeding the documents overnight as per his request so he can process the wire tomorrow.

That's for the first $85k. The $128k Will follow within days

Best Regards and sorry again


Mahmoud Thiam

On May 17, 2016, at 4:43 PM, Eric Wei <ewei@weillp.com> wrote:

Dear Mr. Thiam:

I have been trying to reach you for the past week without success at your 347-522-1150 number.

We have yet to receive the promised $85,000 wire, which was due on Tuesday, August 3rd.  Please advise immediately as to the status of the additional $128,690, which is due tomorrow, May 18th and when you expect to wire the past due $85,000.

It is absolutely imperative that you contact me to discuss the above.  Please call me at 212-248-0808 before 5 pm on Thursday, May 19th. If we do not hear from you before that day and time, we will take legal action against you without further notice.

Please be guided according.

Very truly yours,

Eric S. Wei
Partner | Wei Group LLP
One World Trade Center, Ste 8500
New York, New York  10007-0103
T 212-248-0808 | F 212-248-0475


On Fri, May 13, 2016 at 12:20 PM, Eric Wei <ewei@weillp.com> wrote:
Mr. Thiam:

Please advise immediately as to the status of your late payments. Thank you.

Very truly yours,

Eric S. Wei
Partner | Wei Group LLP
One World Trade Center, Suite 8500
New York, New York 10007-0103
T 212-248-0808 | F 212-248-0475

THE INFORMATION CONTAINED IN THIS EMAIL COMMUNICATION IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENT NAMED ABOVE. This message may be an Attorney-Client communication, and as such is privileged and confidential. If the reader of this message is not the intended recipient, you are hereby notified that you have received this communication in error, and that any review, dissemination, distribution, or copying of the message is strictly prohibited. If you have received this transmission in error, please destroy this transmission and notify us immediately by telephone and/or reply email.

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any matters addressed herein.

Visit our website at www.wei-law.com

# EXHIBIT E

12/29/2016                                   WEI GROUP LLP Mail - Re: 170 East End Avenue - URGENT



Eric Wei <ewei@weillp.com>

## Re: 170 East End Avenue - URGENT

**Mahmoud.thiam@gmail.com** <mahmoud.thiam@gmail.com>                    Fri, Nov 18, 2016 at 12:17 AM
To: Eric Wei <ewei@weillp.com>

Dear Mr. Wei

Your message is well received. I am still in the Gulf. I fully accept every statement you make and understand that you have to take action.

I do not seek to make excuses but feel I owe you an explanation for the continued delays in spite of my assurances over 2 months ago now.

As you know, I came to Dubai to collect payment owed me from a concluded business transaction. I was asked to wait for the paying agent who was abroad on a personal matter and should return within days.

The person turns out to have taken his mother to Europe for open heart surgery and kept delaying his return due to complications.

I have now been here 5 weeks but chose to stay until he returns and pays me. As of yesterday the person had not returned and today is Friday. So even if he was to return today he would not be able to act because it's the weekend.

I have tried to obtain personal loans here to pay you in the meantime but have been u successful.

Unless something unforeseen happens today, I do not anticipate being able to meet your deadline. I will spend the day trying but I have to face reality.

The fact that the gentleman will return at some point in the next few days is certain and the payment will be made without feu when he arrives.

At that point, PAYMENT In full will
Be made to your client. Once that is done I will seek to offer advance payment in the hope that any procedure you have started can be stopped.

I do not feel I can ask for more patience. I will therefore let you proceed while I make every effort to pay.

Thank you again for all the time and understanding you extended so far.

Best Regards


Mahmoud Thiam

On Nov 18, 2016, at 8:01 AM, Eric Wei <ewei@weillp.com> wrote:


    Dear Mr. Thiam:

https://mail.google.com/mail/u/1/?ui=2&ik=2f804a3765&view=pt&q=thiam&search=query&msg=15875dea0be5b821&siml=15875dea0be5b821                   1/3

I write to remind you that the **deadline** for payment is **TOMORROW (11/18) at 5 pm EST**.

If we do not receive at least the demanded payment amount by the aforementioned date and time, we will seek a **Warrant of Eviction** and a judgment of the past due rent presently totaling $186,190 against you and your wife.

Please be reminded that I personally served you with a 30-day Notice to Quit (the "Notice") when we met in September. This Notice demanded that you vacate the premises on or before October 27, 2016. You have obviously failed to comply.

If you would like to discuss possible resolution, I urge you to call me at 212-248-0808.

Kindly be advised that we will take legal action against you without further notice if you fail to comply with the above. Thank you.

Very truly yours,

Eric S. Wei
Partner | Wei Group LLP
One World Trade Center, Ste 8500
New York, New York 10007-0103
T 212-248-0808 | F 212-248-0475


On Tue, Nov 15, 2016 at 12:10 AM, Eric Wei <ewei@weillp.com> wrote:
Dear Mr. Thiam:

As we discussed last night, it is imperative that you wire funds to us without delay. **You presently owe $186,190** in back rent and agreed upon penalties (including November 2016).

My clients have no more patience for your oft missed deadlines and broken promises. They are extremely upset and I am no longer able to buy you any additional time so that you may make good on your word.

**Please be advised that if we do not receive payment of at least $70,000 by 5 pm EST on Friday, November 18, 2016, we will seek a court order for your immediate eviction** on the following business day. There will be no extensions to this deadline.

It is imperative that you take any and all possible steps to remediate this situation as if we are forced to take court action, a Sheriff's Officer may come to the premises to remove you and your family.

Kindly be guided accordingly.

Very truly yours,

Eric S. Wei
Partner | Wei Group LLP
One World Trade Center, Ste 8500
New York, New York 10007-0103
T 212-248-0808 | F 212-248-0475

WEI GROUP LLP Mail - Re: 170 East End Avenue - URGENT

THE INFORMATION CONTAINED IN THIS EMAIL COMMUNICATION IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENT NAMED ABOVE. This message may be an Attorney-Client communication, and as such is privileged and confidential. If the reader of this message is not the intended recipient, you are hereby notified that you have received this communication in error, and that any review, dissemination, distribution, or copying of the message is strictly prohibited. If you have received this transmission in error, please destroy this transmission and notify us immediately by telephone and/or reply email.

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any matters addressed herein.

Visit our website at www.wei-law.com