```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                          17 CR 47 (DLC)

MAHMOUD THIAM,

                Defendant.

------------------------------x
                                        New York, N.Y.
                                        February 7, 2017
                                        4:00 p.m.


Before:

                    HON. DENISE COTE,

                                        District Judge


                         APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
ELISHA KOBRE
     Assistant United States Attorney
            -and-
UNITED STATES DEPARTMENT OF JUSTICE
BY:  LORINDA LARYEA

SULLIVAN & WORCESTER LLP
   Attorneys for Defendant
BY:  PAUL E. SUMMIT
       ANDREW SOLOMON

ALSO PRESENT:  Special Agent Stephanie Krug, FBI
                         Paralegal Specialist Alexander Beer
```

1  THE DEPUTY CLERK:  United States of America v. Mahmoud
2  Thiam.  Is the government ready to proceed?
3  MR. KOBRE:  Yes, good afternoon, your Honor.  Elisha
4  Kobre for the government.  With me at counsel table is FBI
5  Special Agent Stephanie Krug, trial attorney Lorinda Laryea of
6  the Criminal Division of the Department of Justice, and a
7  paralegal with our office, Alex Beer.
8  THE DEPUTY CLERK:  For the defendant Thiam, are you
9  ready to proceed?
10  MR. SUMMIT:  Yes, your Honor.  Paul Summit for
11  defendant Thiam with Andrew Solomon of my office, Sullivan &
12  Worcester.
13  May I just start off by apologizing.  I sincerely
14  apologize.  I don't know what happened with regard to the
15  2 p.m. court date, but I apologize to the Court and to all
16  whose schedules were affected.
17  THE COURT:  Thank you.
18  Mr. Kobre, this is my initial conference in this case.
19  I'll get an introduction to the case from you.
20  MR. KOBRE:  Sure, your Honor.  The defendant was
21  arrested on December 13 on a criminal complaint in this
22  district charging him with money laundering offenses.
23  And I can describe generally the factual background of
24  that if your Honor wants, but just to get to sort of what's
25  happened procedurally since then, is that the defendant was

1   indicted by a grand jury on January 18, was arraigned before
2   Magistrate Judge Francis on the 24th.
3           A large amount of discovery was produced to the
4   defense this past Friday.  I would say the bulk of the
5   discovery, there are a few items outstanding.  And the
6   government believes we can produce the remaining discovery
7   items not by this Friday but by next Friday, which would be the
8   17th of February.  And I can give your Honor a little bit more
9   background on what sort of is still outstanding.
10          THE COURT:  Please.
11          MR. KOBRE:  Let me just tell your Honor what the
12  nature of the discovery is in this case and what's been
13  produced so far.
14          So, there's, among other things, your Honor, the
15  defendant made an extensive post-arrest statement which was
16  videotaped and was also subsequently transcribed.  There were
17  also several search warrants that were executed.  In
18  particular, there were three search warrants for various e-mail
19  accounts associated with the case, and then there was a search
20  warrant executed at the defendant's residence.  And this goes
21  to sort of what has not yet been produced.
22          During the course of that search, among other things,
23  there were obviously documents and records were seized, but
24  numerous electronic devices have been seized, were seized as
25  well.  Those are in the process, as quickly as we can, of

getting those imaged and being able to turn them over to defense counsel.  It is quite a bit of electronic discovery, your Honor.

So what's been produced so far are all the search warrant materials, the post-arrest statement, and the e-mail accounts, as well as approximately 335,000 pages of documents which include bank records and other records pertaining to this case.

What's left from the government's perspective is the images of the electronic devices that were seized, and like I said, your Honor, we've asked defense counsel for a hard drive and we're going to be ready to produce that no later than a week from Friday.  And then there are some additional records which were obtained by way of subpoena, some of them more recently.  So we're gathering those final items together, but they're very small in comparison to what's already been produced.  So we would just ask to have until the 17th to get all of those items out the door, at which point the government will have completed its discovery.

THE COURT:  Thank you.  If this case went to trial, how long would it take to try?

MR. KOBRE:  I think approximately two weeks, your Honor.

THE COURT:  What would be the principal sources of the government's evidence at trial?

1  MR. KOBRE:  Yes, your Honor.  So, the principal
2  sources of the government's evidence would be the defendant's
3  post-arrest statement which was videotaped, there would be
4  witnesses from the Republic of Guinea who would testify about
5  the defendant's conduct there as the Minister of Mines and
6  promoting of an agreement granting valuable mining rights to a
7  Chinese conglomerate.  So there would be witnesses from abroad
8  who the government would bring, there would be bank records,
9  there would be the testimony of witnesses from various banks
10 inside the United States, who would testify to
11 misrepresentations made by the defendant in connection with the
12 money laundering scheme.  There would be e-mails and other
13 records as well, including -- so, e-mails, I'm sorry, and as
14 well bank records, some of which were obtained through the MLAT
15 process.
16        So the principal source of the evidence in this case
17 are bank records from Hong Kong where the defendant received
18 bribe proceeds, and so that would be also a principal source of
19 the evidence.
20        THE COURT:  Briefly describe the charge factually.
21 Not the legal basis for the charge, but the factual charge
22 here.
23        MR. KOBRE:  Yes, your Honor.  So the defendant was --
24 who is a U.S. citizen, was the Minister of Mines of the
25 Republic of Guinea in West Africa between 2009 and 2010.

1    During that period of time, among other things, the defendant
2    promoted the award of very valuable mining rights in the
3    Republic of Guinea to a Chinese conglomerate.  Right around at
4    the same time, the defendant opened a bank account in Hong
5    Kong, made various misrepresentations in opening that account
6    to conceal the fact that he was a minister, that he was a
7    public official of the Republic in Guinea, and received into
8    that Hong Kong bank account a total of about $8.5 million.  The
9    defendant then proceeded to launder that money into the United
10   States.  And at various instances when he was bringing the
11   money here to the United States, was questioned by various
12   compliance personnel with banks here about the nature of the
13   money that he was bringing here from Hong Kong, that he was
14   wiring to the United States, and made misrepresentations in
15   connection with that as well.
16          That's really sort of the first charge which is the
17   1957 charge.
18          In addition, the second count pertains more
19   specifically to the defendant's use of some of those bribe
20   proceeds from the Hong Kong account to purchase a $3.75 million
21   estate in Dutchess County.  And in support of that, your Honor,
22   there are various e-mails showing that the defendant
23   essentially concealed the source of the -- concealed the source
24   of the proceeds that were used to purchase this, by an
25   agreement that he had with an associate of his, whereby the

1   Dutchess County estate would be purchased by a company based in
2   Mozambique in exchange for the defendant wiring $375,000 toward
3   the purchase of the property.
4           THE COURT:  Thank you.  So, the defendant has been
5   arraigned on the indictment and is in custody.  We need to set
6   a schedule for trial, and once we have a trial date, we'll set
7   a schedule for motions that's appropriate.
8           I understand the discovery is voluminous.  Have
9   counsel for the government and the defendant discussed a
10  schedule for trial?
11          MR. KOBRE:  Your Honor, I had a very brief
12  conversation with Mr. Summit.  However, I understand Mr. Summit
13  has a motion for your Honor regarding his representation, so
14  our conversation didn't get that far.  And that's really where
15  we are.
16          THE COURT:  Mr. Summit.
17          MR. SUMMIT:  Thank you, your Honor.  Yes, we intend to
18  move to withdraw.  We had hoped to get the motion on file
19  before this initial status conference, but because of the
20  misunderstanding in my schedule, I wasn't aware that it was on
21  for today, and that's my own fault.
22          We haven't filed the motion yet.  But the motion is
23  based on two things, principally.  First, we have expended
24  already a tremendous amount in fees -- I mean, in time that
25  would be charged out.  Mr. Thiam in good faith, I think,

1  thought he could raise a very substantial legal defense fund
2  from friends and family and colleagues.  And it has not
3  happened.  I don't think there was any bad faith at all, but it
4  has not happened.
5        We are very substantially unpaid with absolutely no
6  prospect of being further paid.  And if your Honor wishes, I
7  can provide all of the particulars.
8        THE COURT:  Are you representing to me that your
9  client is indigent?
10       MR. SUMMIT:  Yes.
11       THE COURT:  And entitled to CJA funds?
12       MR. SUMMIT:  Yes.
13       THE COURT:  Now, I understand there was a bail
14 proceeding before a colleague of mine in my absence.  And I
15 haven't read the transcript, but it's available to me to read.
16 So, you think your client in good faith can sign an affidavit
17 that would qualify him under the Criminal Justice Act?
18       MR. SUMMIT:  Yes, I do, your Honor.  Yes, I do.
19       THE COURT:  When I read the transcript, there will be
20 nothing inconsistent?
21       MR. SUMMIT:  There will be, respectfully, speculation
22 on the government's part as to the possibility of hidden
23 assets.  There will not be facts about hidden assets nor, in my
24 view, a reality, so far as I know, about hidden assets, your
25 Honor.

1         I believe that this man is deeply in debt and we have
2    set forth a lot of these debts.  His children -- the family
3    owes enormous amounts to two private schools, and the
4    children -- he has three children living here in New York
5    City -- are on the verge of being thrown out of those private
6    schools.
7         THE COURT:  I'm sorry.  He's paying tuition to private
8    schools?
9         MR. SUMMIT:  He used to pay tuition to private
10   schools.  He's wildly in arrears on the tuition.  He is on the
11   verge of being thrown out of an apartment, and there are
12   eviction proceedings against his family.  He owes 8 or $9
13   million to the Internal Revenue Service, about a million
14   dollars to New York State.
15        This is a family situation on the verge of
16   catastrophe.  And I do believe that if there were hidden
17   assets, they would be invoked to prevent those catastrophes.
18        And your Honor, you're absolutely right, your Honor,
19   there is a lengthy transcript about this.  And I would welcome
20   the Court's attention to it.  I think the Court will conclude
21   that Mr. Thiam can in good faith submit such an affidavit.
22        THE COURT:  And your other ground?  I think you said
23   there were two.
24        MR. SUMMIT:  Yes, I have a tax evasion trial in Boston
25   starting in late March, and this is a jail case.  I know your

1    Honor wishes to move it rapidly.  Mr. Thiam I'm sure wishes to
2    move it rapidly.  And I must turn my attention to that trial.
3    It's in Federal District Court in Boston.
4              THE COURT:  Excuse me just one minute.  My deputy has
5    handed me the pretrial services report for the defendant.  Let
6    me look at that.
7              (Pause)
8              THE COURT:  Thank you.  I've had a chance to review
9    it.  I appreciate that opportunity.
10             So, frankly, Mr. Summit, as I expect you would suggest
11   to me, whether or not you had this other trial commitment,
12   given the volume of discovery and the seriousness of the
13   charges, you would be wanting some time to prepare for trial
14   anyway.  But I understand the real here issue here is whether
15   or not, because your bills won't be paid and the defendant is
16   indigent and able to qualify under CJA, at least as you
17   understand it, I should appoint CJA counsel to represent him
18   and relieve you of the representation.
19             Obviously, it is inefficient to do all of this in
20   stages, which I know you're acknowledging that you wish you had
21   made your motion earlier so we could deal with this all
22   efficiently.
23             MR. SUMMIT:  Yes.
24             THE COURT:  But I need the defendant to fill out and
25   swear to a financial affidavit to qualify him for CJA funds.

1   There are obligations that he would assume under the law for
2   false statements and obligations to pay back the CJA funds that
3   might be expended on his behalf in this defense.
4       Given the history here and what I'm hearing and the
5   fact that he retained you and you accepted his him as a client,
6   I just want to make sure that I get a thoughtful CJA affidavit
7   executed before I consider your application.
8       MR. SUMMIT:  Absolutely, your Honor.  I will work with
9   him on that tomorrow.
10       THE COURT:  Okay.  So we'll put this matter over.  And
11   at the next conference then later this week, I'll decide
12   whether or not to relieve you as counsel, and appoint CJA
13   counsel, if that's appropriate, and schedule a trial date.  So
14   you should come prepared with your calendar just in case I
15   don't relieve you, because we will set a trial date.
16       MR. SUMMIT:  Thank you, your Honor.  Would your Honor
17   care to have a written motion in any event or simply the CJA
18   application or affidavit?
19       THE COURT:  I don't need a written motion.  I don't
20   normally get them from counsel.  I'm happy to have one if you
21   want to submit one.
22       MR. SUMMIT:  Okay.
23       THE COURT:  But I do need the affidavit carefully with
24   advice from counsel filled out so that the defendant
25   understands that these statements, which will be made under

1   oath, carry weight and will not be taken lightly.

2            MR. SUMMIT:  Your Honor, there is an allegation in the
3   indictment that Mr. Thiam received a large sum of money in Hong
4   Kong.  And he apparently made statements, I haven't reviewed
5   yet the statements that he made.  But I believe from the
6   government's representations that he was questioned about that
7   money in Hong Kong and made representations about it.

8            I think -- I would be reluctant to see him make any
9   representations in an affidavit about that money, which is long
10  gone apparently, with regard to whether it was a loan or a gift
11  or what it was.  If your Honor follows what I'm saying.  On the
12  other hand, I don't want the affidavit to be incomplete.

13           I guess what I'm suggesting is there may be one
14  section that has to be in camera so that so he's not taking a
15  position with regard to a trial issue at a time when we haven't
16  even reviewed the tape of his interview.

17           THE COURT:  Well, I haven't thought about this issue
18  before.  It seems to me, and I'm just seeking to give guidance
19  to counsel so that you can decide whether or not you wish to
20  find legal authority and argue this point to me.  In the first
21  instance, the affidavit is a statement to the Court, and it
22  must be filled out or counsel will not be appointed to
23  represent him.  These funds are only available to someone who
24  can't otherwise afford counsel.

25           The issue of the government access to the affidavit

1    and the information is a separate issue, I think.  And the

2    timing of that theoretically could be post-trial, if there is

3    going to be a trial.  There might be a disposition.  Post a

4    plea or a trial.  And if the defendant chose to go to trial and

5    was acquitted, it may never be needed to be unsealed.  The

6    government could make an application.

7             But, at some point the government's going to have

8    access to this, because if there is a false statement, it's

9    going to be made under oath, and the government would have an

10   opportunity to investigate, and the Court has an obligation in

11   monitoring these funds and making decisions about proper use of

12   CJA funds, which is taxpayer money, and allocated for these

13   important purposes, to make sure there aren't false statements.

14            So I suggest, Mr. Summit, that you and Mr. Kobre

15   discuss this issue and see if you can work something out with

16   respect to the process for filling out the affidavit.

17            Today is Tuesday, so let's look at Thursday,

18   Ms. Rojas.

19            THE DEPUTY CLERK:  3:30 p.m.  Thursday, February 9, at

20   3:30.

21            MR. SUMMIT:  And may I say, your Honor, I'm optimistic

22   that Mr. Kobre and I can work this out.  I'm hopeful.  And may

23   I also say that assuming the Court does grant my motion, we

24   will provide any transitional assistance to the CJA counsel

25   that we can.  Absolutely.

H273THIC

1  THE COURT:  Good.  And if I don't grant it, come
2  prepared to talk about a trial date.
3  MR. SUMMIT:  Yes.
4  THE COURT:  Good.  Let's talk about exclusion of time.
5  Fill me in where we stand, Mr. Kobre, on that.
6  MR. KOBRE:  Yes, your Honor.  So several days have
7  elapsed.  In particular between the date of the indictment,
8  which was the 18th, and the date of the arraignment which was
9  the 24th, time was not excluded.  So that would be --
10  THE COURT:  Roughly six days.
11  MR. KOBRE:  Correct, your Honor.  And the government
12  would move under the Speedy Trial Act to exclude time between
13  today and Thursday, to allow defense time to sort out the
14  issues with representation, so that they can begin to review
15  the discovery and decide how to move forward on the case.
16  THE COURT:  Was time excluded then between the 24th
17  and today?
18  MR. KOBRE:  It was, your Honor, and that was by
19  Magistrate Judge Francis.
20  THE COURT:  Any objection to an exclusion for two days
21  until February 9?
22  MR. SUMMIT:  No objection, your Honor.
23  THE COURT:  I make the exclusion pursuant to Title 18,
24  United States Code, Section 3161(h)(7)(A), finding the
25  exclusion to be in the interest of justice and to outweigh the

H273THIC

1    best interests of the public and defendant in a speedy trial.
2    It's going to permit the representation issues to be resolved
3    and put us in a better position on Thursday to set a schedule
4    for this case.
5             Thank you all.
6                              o0o