H53Wthi1

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    UNITED STATES OF AMERICA,

 4               v.                           17 Cr. 47 (DC)

 5    MAHMOUD THIAM,

 6                    Defendant.              Trial

 7    ------------------------------x

 8                                            New York, N.Y.
                                              May 3, 2017
 9                                            9 :55 a.m.

10
      Before:
11
                          HON. DENISE COTE,
12
                                            District Judge,
13                                            and a Jury

14                          APPEARANCES

15    JOON H. KIM
           Acting United States Attorney for
16         the Southern District of New York
      BY:  ELISHA J. KOBRE
17         CHRISTOPHER J. DiMASE
           Assistant United States Attorneys
18           -and-
      U.S. DEPARTMENT OF JUSTICE
19    BY:  LORINDA I. LARYEA

20    LAW OFFICE OF AARON GOLDSMITH, PC
           Attorneys for Defendant
21    BY:  AARON M. GOLDSMITH, Esq.
           MICHAEL DELAKAS, Esq.

22
      ALSO PRESENT:  Patrick Killeen, Special Agent, FBI
23                   Alexander Beer, Paralegal Specialist, USAO
                     Katherine Bosley, Paralegal Specialist, DOJ
24                   Jennie Carmona, Paralegal, LO of Aaron Goldsmith

25
```

1          (Trial resumed)

2          THE COURT:  Good morning, everyone.

3          As Ms. Rojas told you at 9:30, we were missing a juror

4   who indicated, through a call, that the juror would be 15

5   minutes late.  We've now waited 20 minutes, or longer,

6   whatever.  Ms. Rojas inquired of counsel at that time whether

7   they wished to wait for the juror; they've indicated yes.

8          Counsel, any objection to excusing the juror now and

9   using one of our alternates?

10          MR. GOLDSMITH:  Your Honor, if I may, Ms. Carmona just

11   arrived, and she's told me that she saw the juror on line at

12   security downstairs.

13          THE COURT:  Our jurors are given cards to speed their

14   processing through security, so we're going to inquire there.

15          MR. GOLDSMITH:  Thank you.

16          THE COURT:  The juror just arrived, 25 minutes late.

17   We'll obviously wait for the juror to be prepared to enter with

18   the remainder of the jurors.

19          Thank you, Ms. Carmona.

20          Counsel, did you gather together the exhibits that are

21   ready to go in?

22          MR. KOBRE:  We have, your Honor, and defense counsel

23   had a chance to look at them, and we provided them to

24   Ms. Rojas.

25          THE COURT:  Good.  And how about that redacted

1   indictment; everybody's looked at it?

2                   MR. KOBRE:  Everyone is satisfied.

3                   MR. GOLDSMITH:  Yes, your Honor.  We confirmed the

4   government prepared the exhibits last night.  Mr. Delakas and I

5   reviewed them this morning, as well as the redacted indictment,

6   and that's been provided to Ms. Rojas.

7                   THE COURT:  Thank you.

8                   Bring in the jury.

9                   (Jury present)

10                  THE COURT:  Good morning, ladies and gentlemen.  I'm

11  going to complete the reading of the charge to you.  Each of

12  you, I see, has picked up the copy that you left on your

13  chairs.  We'll just take a moment to turn to page 22, for those

14  of you who are reading along, and that is the page regarding

15  venue.  OK?

16                  Yesterday, I instructed you with respect to the

17  elements of each of the two violations of United States law

18  that are charged here.  There's only one more portion of the

19  violation of each of these United States crimes that the

20  government must prove, and that is venue, on page 22.  That's

21  where we will pick up.

22                  In addition to all of the elements that I have

23  described for you, you must also decide for each count whether

24  any part of the crimes took place at least in part in the

25  Southern District of New York.  The Southern District of New

H53Wthi1                    Charge

York includes New York County -- that is, Manhattan -- the

Bronx, Dutchess, and Westchester Counties.

Now, there are two types of evidence that you may

properly use in reaching your verdict. One type of evidence is

direct evidence. One kind of direct evidence is a witness's

testimony about something he or she knows by virtue of his or

her own senses -- something the witness has seen, felt,

touched, or heard. Direct evidence may also be in the form of

an exhibit.

The other type of evidence is circumstantial evidence.

Circumstantial evidence is evidence that tends to prove one

fact by proof of other facts. There's a simple example of

circumstantial evidence that is often used in this courthouse.

Assume that when you came into the courthouse this

morning the sun was shining and it was a nice day. Assume that

the courtroom blinds are drawn and you cannot look outside. As

you are sitting here, someone walks in with an umbrella that is

dripping wet. Somebody else then walks in with a raincoat that

is also dripping wet.

Now, you cannot look outside the courtroom and you

cannot see whether or not it is raining, based on this

hypothetical, so you have no direct evidence of that fact. But

on the combination of facts that I have asked you to assume, it

would be reasonable and logical for you to conclude that

between the time you arrived at the courthouse and the time

1    these people walked in, it had started to rain.

2            That is all there is to circumstantial evidence.  You

3    infer on the basis of reason and experience and common sense

4    from an established fact the existence or the nonexistence of

5    some other fact.

6            Many facts, such as a person's state of mind, can only

7    rarely be proved by direct evidence.  Circumstantial evidence

8    is of no less value than direct evidence.  It is a general rule

9    that the law makes no distinction between direct and

10   circumstantial evidence, but simply requires that before

11   convicting a defendant, you, the jury, must be satisfied of the

12   defendant's guilt beyond a reasonable doubt from all the

13   evidence in the case.

14           Now for the important subject of evaluating testimony.

15   How do you evaluate the credibility or believability of the

16   witnesses?  The answer is you use your plain common sense.

17   Common sense is your greatest asset as a juror.

18           If you find that a witness is intentionally telling a

19   falsehood, that is always a matter of importance that you

20   should weigh carefully.  If you find that any witness has lied

21   under oath at this trial, you should view the testimony of such

22   a witness cautiously and weigh it with great care.  It is,

23   however, for you to decide how much of a witness's testimony,

24   if any, you wish to believe.  Few people recall every detail of

25   every event precisely the same way.  A witness may be

971

1   inaccurate, contradictory, or even untruthful in some respects

2   and yet entirely believable or truthful in other respects.   It

3   is for you to determine whether such inconsistencies are

4   significant or inconsequential, and whether to accept or reject

5   all or to accept some and reject the balance of the testimony

6   of any witness.

7           You are not required to accept testimony even though

8   the testimony is uncontradicted and the witness's testimony is

9   not challenged.   You may decide because of the witness's

10  bearing or demeanor, or because of the inherent improbability

11  of the testimony, or for other reasons sufficient to yourselves

12  that the testimony is not worthy of belief.   On the other hand,

13  you may find, because of a witness's bearing and demeanor and

14  based upon your consideration of all the other evidence in the

15  case, that the witness is truthful.

16          Thus, there is no magic formula by which you can

17  evaluate testimony.   Among the factors you may consider are the

18  witness's intelligence; the ability and opportunity the witness

19  had to see, hear, or know about the things that the witness

20  testified about; the witness's memory; any interest, bias, or

21  prejudice the witness may have; the manner of the witness while

22  testifying; and the reasonableness of the witness's testimony

23  in light of all the evidence in the case.

24          The defendant has testified and was subject to

25  cross-examination like any other witness.   You should examine

1   and evaluate his testimony just as you would the testimony of

2   any witness with an interest in the outcome of the case.

3          You have heard that defendant Mahmoud Thiam made

4   certain statements to law enforcement authorities, which were

5   videotaped.  There is nothing illegal with the government's use

6   of this videotaped interview.  You may consider this evidence

7   along with all the other evidence in the case and give the

8   statements such weight as you feel they deserve in light of all

9   the evidence.

10          You have heard testimony that the defendant made

11  certain statements to law enforcement authorities and bank

12  employees in which the defendant claimed that his conduct was

13  consistent with innocence and not with guilt.  The government

14  claims that these statements in which he exonerated or

15  exculpated himself are false.

16          False exculpatory statements are circumstantial

17  evidence of a defendant's consciousness of guilt and have

18  independent probative value.  If you find that the defendant

19  gave a false statement in order to divert suspicion from

20  himself, you may, but are not required to, infer that the

21  defendant believed that he was guilty.  You may not, however,

22  infer on this basis alone that the defendant is, in fact,

23  guilty of the crimes with which he is charged.  Whether or not

24  the evidence as to the defendant's statements shows that the

25  defendant believed he was guilty, and the significance, if any,

1   to be attached to any such evidence, are matters for you, the

2   jury, to decide.

3        You have heard testimony of law enforcement officers.

4   The fact that a witness is employed by the government does not

5   mean that the witness's testimony is necessarily deserving of

6   more or less consideration or greater or lesser weight than

7   that of any other witness.  It is your decision, after

8   reviewing all the evidence, whether to accept or reject the

9   testimony of the witness and to give to that testimony whatever

10  weight you find it deserves.

11       Some of the witnesses speak French and testified

12  through an interpreter.  The evidence you are to consider is

13  only that provided through the official court interpreter.

14  Even if some of you might know French, it is important that all

15  jurors consider the same evidence.  Therefore, when a witness

16  has spoken in French, you must base your decisions solely on

17  the testimony presented through the interpreter.  Similarly,

18  where translations of documents have been provided to you, you

19  must accept these translations as accurate unless a witness has

20  offered testimony giving an alternate translation.  If there is

21  a dispute regarding the translation, you must rely on the

22  factual record in this case to resolve the dispute, and not on

23  any personal knowledge you may have of French.

24       You have heard reference by defense counsel to the

25  fact that certain investigative techniques were not used by law

H53Wthi1                          Charge

 1    enforcement.  There is no legal requirement, however, that the

 2    government prove its case through any particular means.  Law

 3    enforcement officers have no duty to employ in the course of an

 4    investigation all of the many tools at their disposal, and the

 5    failure to use any particular technique or techniques does not

 6    tend, in and of itself, to show that a defendant is not guilty

 7    of a crime with which he is charged.  Your concern is whether

 8    or not, on the evidence or lack of evidence, a defendant's

 9    guilt has been proved beyond a reasonable doubt.

10           Certain exhibits have been redacted to remove

11    information that is irrelevant to the issues that you must

12    decide at this trial.  You must not speculate regarding the

13    contents or subject matter of the removed information.  Your

14    job is to decide the issues of fact based solely on the

15    evidence received at trial, or the lack of evidence.

16           Stipulations have been entered into relating to

17    various facts in the case.  A stipulation is an agreement

18    between the parties as to what certain facts were or what the

19    testimony would be if certain people testified before you.  The

20    stipulations are the same for your purposes as a presentation

21    of live testimony.  You should consider the weight to be given

22    such evidence just as you would any other evidence.

23           Various charts and summaries were shown to you in

24    order to make the evidence more meaningful and to aid you in

25    considering the evidence.  They are no better than the

testimony or the documents on which they are based.  Therefore,

you are to give no greater consideration to these charts or

summaries than you would give to the evidence upon which they

are based.  It is for you to decide whether the charts or

summaries correctly present the information on which they are

based.

You may not draw any inference, favorable or

unfavorable, towards the government or the defendant from the

fact that any person other than the defendant is not on trial

here.  You may also not speculate as to the reasons why other

persons are not on trial.  These matters are wholly outside

your concern and have no bearing on your function as jurors.

You are about to begin your deliberations.  Many of

the exhibits will be sent to you in the jury room.  If you want

any of the remaining exhibits or any of the testimony during

your deliberations, that can be arranged.  Please appreciate

that it is not always easy to locate any testimony that you

might want, so be as specific as you possibly can.  Any

communication with the Court should be made in writing, signed

by your foreperson, and given to one of the marshals.

For those of you who took notes during the course of

the trial, you should not show your notes to or discuss your

notes with any other juror during your deliberations.  Any

notes you have taken are to be used solely to assist you.  The

fact that a particular juror has taken notes entitles that

976

1    juror's views to no greater weight than those of any other

2    juror.  Finally, your notes are not to substitute for your

3    recollection of the evidence in this case.  If you have any

4    doubt as to the testimony, you may request that the official

5    trial transcript that has been made of these proceedings be

6    read or otherwise provided to you.

7         The question of possible punishment of the defendant

8    is of no concern to the jury and should not in any sense enter

9    into or influence your deliberations.

10        Your verdict must be based solely on the evidence

11   admitted at trial.  You may not discuss this case with anyone

12   except the jurors with whom you are deliberating when all of

13   you are gathered together in the jury room.  You may not do any

14   independent research about any of the people, facts, or issues

15   in this case, using the Internet or any other research tool.

16        Do not communicate with each other by telephone or

17   computer during your deliberations.  Moreover, you should not

18   give anyone any information about your jury service on any

19   social networking website.  You should not update your "status"

20   on any website to tell anyone that you are a juror on a trial,

21   or to give any information about the trial at all during your

22   deliberations.

23        I am also sending a copy of the indictment into the

24   jury room.  You are reminded, however, that the indictment is

25   not evidence.  It is merely an accusation and is not to be used

by you as any proof of the conduct charged.

The foreperson will also receive a verdict form on which to record your verdict.  It lists the questions that you must resolve based on the instructions I have given.  When the foreperson has completed the form, each of you must sign your name, and the form will be marked as a court exhibit.

The most important part of this case, members of the jury, is the part that you as jurors are now about to play as you deliberate on the issues of fact.  It is for you, and you alone, to decide whether the government has proved beyond a reasonable doubt each of the essential elements of the crimes with which the defendant is charged.  If the government has succeeded, your verdict should be guilty; if it has failed, it should be not guilty.

I know you will try the issues that have been presented to you according to the oath you have taken as jurors.  In that oath, you promised that you would well and truly try the issues joined in this case and a true verdict render.  Your function is to weigh the evidence in the case and determine whether or not the defendant is guilty solely on the basis of such evidence.

As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity to express your own views.  Every juror should be heard.  No one juror should hold center stage in the jury room and no one juror should

control or monopolize the deliberations.  If, after listening

to your fellow jurors and if, after stating your own view, you

become convinced that your view is wrong, do not hesitate

because of stubbornness or pride to change your view.  On the

other hand, do not surrender your honest convictions and

beliefs solely because of the opinions of your fellow jurors or

because you are outnumbered.  Your final vote must reflect your

conscientious belief as to how the issues should be decided.

Your verdict must be unanimous.  If at any time you

are not in agreement, you are instructed that you are not to

reveal the standing of the jurors, that is, the split of the

vote, to anyone, including the Court, at any time during your

deliberations.  Finally, I say this not because I think it is

necessary, but because it is the custom in this courthouse to

say this:  You should treat each other with courtesy and

respect during your deliberations.

Your first task as a jury will be to choose your

foreperson.  The foreperson has no greater voice or authority

than any other juror but is the person who will communicate

with the Court when questions arise.

Ladies and gentlemen, all litigants stand equal in

this room.  All litigants stand equal before the bar of

justice.  All litigants stand equal before you.  Your duty is

to decide the issues before you fairly and impartially, and to

see that justice is done.

H53Wthi1                         Charge

 1          Under your oath as jurors, you are not to be swayed by
 2     sympathy.  You should be guided solely by the evidence
 3     presented during the trial and the law as I gave it to you,
 4     without regard to the consequences of your decision.  You have
 5     been chosen to try the issues of fact and reach a verdict on
 6     the basis of the evidence or lack of evidence.  If you let
 7     sympathy interfere with your clear thinking, there is a risk
 8     that you will not arrive at a just verdict.  All parties are
 9     entitled to a fair trial.  You must make a fair and impartial
10     decision so that you will arrive at a just verdict.
11          Members of the jury, I ask your patience for a few
12     moments longer.  It is necessary for me to spend a few moments
13     with counsel and the reporter at the sidebar.  Please remain
14     patiently in the jury box without speaking to each other, and I
15     will return to you in just a moment to submit the case to you.
16          Thank you.
17          Counsel.
18          (At sidebar)
19          THE COURT:  Any objections or requests?
20          MR. GOLDSMITH:  No.
21          MR. KOBRE:  No.
22          THE COURT:  Thank you.
23          (In open court)
24          THE COURT:  Ms. Rojas, would you please swear in the
25     marshal.

1          (Marshal sworn)

2          THE COURT:  At this time, Ms. Rodriguez and Mr. Kuhn,

3    I am going to thank you for your service.  Only 12 members of

4    our jury can deliberate.  You have seen how important it was to

5    have alternates; some of your fellow alternates are now sitting

6    as deliberating jurors.

7          I am going to make a request of you that you not

8    discuss this case with anyone until you hear that the jury has

9    reached a verdict in this case.  You can call Ms. Rojas to

10   learn when that will occur.  I am going to ask you to leave

11   your jury charges on the chairs and return to the jury room now

12   to get your belongings, and when the marshal tells me that you

13   have left the jury room, then I will send the remaining jurors

14   to the jury room for their deliberations.

15         Again, thank you very much for your jury service.

16         (Alternate jurors excused)

17         THE COURT:  Mr. Pichardo, I'm going to have my law

18   clerk provide the special verdict form to you.  If you are

19   chosen as the foreperson, that is the form that you must fill

20   out and all jurors must sign.  If someone else is chosen as the

21   foreperson, please give that form to that person.

22         Ladies and gentlemen, we are going to send you in to

23   the jury room in just a moment.  Remember, you cannot

24   deliberate unless all 12 of you are gathered together in the

25   jury room.

H53Wthi1

1          We expect that you will follow the same schedule we

2     have been following throughout the trial.  If you do not have a

3     verdict before lunch, we will take a lunch break from 12:45 to

4     two.  Ms. Rojas will make arrangements for you to be able to

5     order your lunch.  It is up to you whether or not you want to

6     deliberate while eating your lunch together, or talk about

7     other things.  Again, that is a joint decision for you to make.

8          If we do not hear from you during the afternoon, I

9     will bring you in shortly before five, give you instructions

10    for the evening, and we will expect that your deliberations

11    will end at five.  Again, if you have a joint decision to

12    follow some other schedule, you can send me a note, through

13    your foreperson, with your request.  Obviously I need to let

14    counsel have a lunch break, so that is why we are going to

15    stick with the same schedule that we have been following

16    throughout the trial.

17          I understand that the jury room is now ready for you.

18    You may take the copy of the jury charge, and now is the time

19    to discuss the case with each other.

20          (At 10:20 a.m., the jury retired to deliberate)

21          THE COURT:  Counsel, I want you to work with Ms. Rojas

22    to identify the copy of the indictment that should be sent in

23    so we don't make a mistake in this regard.

24          MS. LARYEA:  We have it.

25          THE COURT:  OK.  I think I have the copy.  I'm giving

1    it to Ms. Rojas now, but I'll ask counsel to just review it

2    quickly with her.

3              Counsel, let me talk about what procedure we will

4    follow during the jury's deliberations.  I'm afraid there's

5    only one of you, Mr. Goldsmith.  You're going to have to stay

6    in the courtroom.  And government counsel, you can choose who

7    you want to stay, but one of you has to stay here so we can

8    respond promptly to any jury note.  And if you have to leave

9    the courtroom, just to go briefly to some other place on the

10   floor, make sure someone knows that so we know where to get

11   you.  Otherwise, you have to stay on this floor in this room.

12             As you heard, I'm going to give you a lunch break from

13   12:45 to two, so other than that you'll be here.

14             Let's mark the jury charge as a court exhibit.

15             THE DEPUTY CLERK:  Court Exhibit 4.

16             THE COURT:  Before we have a verdict, let me just say

17   a few things.  I want to say this was a very well-tried case.

18             Mr. Thiam, I don't know what the jury will do, but you

19   were very well represented at trial.  Mr. Goldsmith obviously

20   made enormous effort to get his hands around the evidentiary

21   record and to prepare a strategy and approach for trial and was

22   very well prepared to examine the various witnesses.

23             And I want to thank counsel for their cooperation with

24   each other.  Obviously there were a lot of stipulations, which

25   were entirely appropriate to just eliminate the need for

H53Wthi1

1    document custodians to come in here.  That would have been

2    wasteful of the jury's time and distracted them from focusing

3    on the evidentiary issues, and I thank you for your cooperation

4    in that regard.

5              Thank you.

6              (Recess pending verdict)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

H53Wthi2

1           (Jury not present)

2           THE COURT:  Counsel, we've had two notes.  The first

3   note just identified the foreperson as juror No. 1.  That's

4   been marked as Court Exhibit 5.

5           More recently, we received Court Exhibit 6.  It's been

6   shown to counsel, and it reads, "We are requesting 2 DVD/disc

7   player to review the following," and then it lists Government

8   Exhibits 103, 105, 106, 106A and B, 301 through 304 and 801A.

9           Remind me, counsel, what the list of exhibits are.  I

10  take it they're not in paper form.

11          MR. KOBRE:  That's correct, Judge, all except for 801A

12  are voluminous bank records that are contained on disks.  801A

13  is a disk containing the clips of the videos of the defendant's

14  interview with the FBI.

15          THE COURT:  OK.  And the "2 DVD/disc player," I don't

16  know what that refers to.

17          MR. KOBRE:  Your Honor, it looks to me like it may be

18  an "A," and they're simply requesting a computer of a player to

19  be able to view the records.

20          THE COURT:  Oh, "We are requesting a DVD/disc player

21  to review the following."

22          With the exception of 801A, these are bank records.

23          MR. KOBRE:  Correct, your Honor.  Correct.

24          THE COURT:  And 801A is the FBI interview of the

25  defendant?

1          MR. KOBRE:  Correct, and it contains 18 clips.

2          THE COURT:  OK.  Good.  We can bring the jury in,

3    theoretically, to discuss that issue.  Let's see if we can make

4    a little more progress.  Is there a clean laptop that we could

5    load these onto for the jury to review in the jury room?

6          MR. KOBRE:  Your Honor, we're making efforts to get

7    that.  There will be one.  It's just taking a few minutes to

8    get a hold of it and be sure that it's entirely clean, but

9    we're working on that right now.

10          If I might just offer one additional way that may help

11    to streamline this process, the parties have an exhibit list

12    that we've shown defense counsel, and I think both parties

13    would propose sending that in.  It may help the jury in a

14    number of ways, one of which is that some of these exhibits

15    listed here have some exhibits that are identified on the

16    exhibit list.  For example, 301 is a disk that contains bank

17    records from a particular account, but it has subexhibits 301A,

18    B, C, and D, and those are identified, specifically what each

19    of those are, on the exhibit list, so the jury looking to that

20    would be able to pinpoint, it may help them to identify the

21    documents they're looking for.

22          THE COURT:  Do the documents exist in hard-copy form?

23          MR. KOBRE:  They don't right now.  Some of these

24    exhibits would really be truly voluminous, but some of those

25    exhibits would be manageable.

1        THE COURT:  Like what's manageable, ten pages or a

2   hundred pages?

3        MR. KOBRE:  Varying between maybe ten or so pages up

4   to hundreds of pages.

5        THE COURT:  OK.  And is the exhibit list just a list

6   of those that were received in evidence?

7        MR. KOBRE:  It is.

8        THE COURT:  Could I see it?

9        MR. DiMASE:  Your Honor, yes.  I'll hand that up.

10       We are working to resolve one issue, which is that a

11  couple of the exhibit numbers referring to the disks are not

12  contained on this list.  We're adding those now.  For example,

13  106A and B are listed on this exhibit list, but not 106, which

14  is the disk containing the 106A and B.  Obviously we want to

15  help the jury understand where the evidence is located, so

16  we're going to add the main exhibits for 106, 301, 302, 303,

17  and 304, which are all the CDs themselves, and then make clear

18  that A, B, and all the subexhibit letters are folders on those

19  disks.

20       And just one other observation, the jury has these

21  disks in a folder without any other descriptions of what they

22  are.

23       THE COURT:  I'm sorry.  You sent a disk in, a physical

24  disk?

25       MR. DiMASE:  Disks were sent in, because they are the

H53Wthi2

1     exhibits in evidence, your Honor.

2                THE COURT:  Oh, I wouldn't send a disk in, but that's

3     OK.  You're sending in something they can't do anything with,

4     so it doesn't make much sense to send in a disk.

5                MR. DiMASE:  And moreover, they may not know what is

6     on that particular disk because they don't have the testimony

7     identifying the disk and they don't have a list of exhibits

8     identifying what's on the disk.  They may merely be asking to

9     learn what is on these individual disks at this point, so I

10    think an exhibit list would help.

11               THE COURT:  So the jury's list, then, may be the list

12    of the exhibits they've been given, so they have no idea what

13    you've given them.

14               MR. DiMASE:  Right.

15               THE COURT:  So this note does not necessarily reflect

16    a desire to look at the contents of a disk.  It is simply

17    asking, What have you sent in to us, and what do you want us to

18    do with it?

19               MR. DiMASE:  Possibly.

20               THE COURT:  OK.  Good.  We can help clarify that.  My

21    proposal, and thank you for that explanation, is that we bring

22    them out, we read their note to them.  We tell them that we did

23    not expect them -- well, I'll restrain myself in that regard:

24    We understand that this list may reflect disks that were sent

25    in to them.  We apologize -- I will apologize for sending those

H53Wthi2

1      disks in to them.  We know they can't look at the contents of a

2      disk without some kind of player to read the disks, so what

3      we're going to do instead is send in an exhibit list so that if

4      there is any particular information that they wish to see, they

5      can make a specific request for that information.

6              Or maybe I'll just identify, meanwhile, since you're

7      trying to get a complete exhibit list -- well, let me step back

8      here.

9              I expect what I have here, this exhibit list, is

10     actually the list of exhibits that were received in evidence.

11             MR. DiMASE:  That's correct, your Honor, except for

12     the main disk numbers, which we're adding now.

13             THE COURT:  That's my question.  Is it incomplete?

14     Was a main disk also given a separate number and received into

15     evidence separately?

16             MR. DiMASE:  Yes.  To be clear, let's look at GX106A

17     and B.  In that example, there was a GX106, which was a disk

18     admitted pursuant to stipulation into evidence, and that same

19     stipulation indicated that A and B were folders on that disk

20     containing particular bank records.

21             THE COURT:  OK.

22             MR. DiMASE:  And that same analysis is true with

23     respect to Exhibits 301 through 304.  The main exhibit is the

24     disk that was admitted into evidence.  The subexhibits that are

25     listed as A, B, C, and D are folders on that disk.

1          THE COURT:  OK.  I think we're just going to bring

2     them in, thank them for their note.  I'll read them their note.

3     I'll explain that all of these exhibits that are listed are

4     disks.  I will apologize for sending the disks in without any

5     way for them to access the information on them.  We did not

6     expect them to be able to work with the disks in the jury room

7     without some way to access the information, then explain to

8     them that all of these exhibits are exhibit numbers for bank

9     records, with one exception, 801A, which is a disk with the FBI

10    interview, and so we'll wait for further requests for any

11    particular information they may wish to have us provide to

12    them.

13          Any objection?

14          MR. KOBRE:  No.

15          THE COURT:  Any objection?

16          MR. GOLDSMITH:  Should we also suggest that we're

17    preparing an exhibit list for them to have to guide them?

18          THE COURT:  I think not.

19          MR. GOLDSMITH:  OK.

20          THE COURT:  I think not.  They'll know how to ask for

21    bank records if they want to see them.  They'll know how to ask

22    for the FBI interview if they want to see it.

23          Good.  Bring in the jury.

24          MR. DiMASE:  Judge, also, the clean laptop is ready.

25    We're going to pick it up and bring it here.

H53Wthi2

1          THE COURT:  Thank you so much.

2          I will want counsel to make sure that defense counsel

3    has an opportunity to examine the laptop to confirm it's clean.

4          Bring in the jury.

5          (Jury present)

6          THE COURT:  Ladies and gentlemen, we have two notes

7    from you.  The first note, which was marked as Court Exhibit 5,

8    identifies your foreperson.

9          The second note, received more recently, has been

10    marked as Court Exhibit 6, and it reads as follows:

11          "We are requesting a DVD/disc player to review the

12    following," and then it lists government exhibit numbers: 103,

13    105, 106, 106A and B, 301 through 304, and 801A.

14          I apologize.  I didn't know the disks had been sent in

15    to you, and obviously it would be hard for you to read material

16    on a disk without a disk player, so I apologize for that

17    confusion, and thank you for your note.

18          Let me tell you what are on those disks, and if you

19    want to see what's on those disks, we'll figure out a way to

20    get that information to you.  All of these exhibits reflecting

21    the disks reflect bank records, with one exception.  801A is a

22    disk containing the FBI interview of the defendant, essentially

23    clips of the defendant being interviewed by the FBI.  OK?

24          That, I hope, answers the mystery of what's on the

25    disks, and we'll wait for another question from you.  If you

H53Wthi2

1    want to see the information on the disks, we'll figure out what

2    we can do to make that possible for you.  OK?

3            Thank you so much.  You may return to your

4    deliberations.

5            (Deliberations resumed)

6            THE COURT:  Good.  In roughly 10 or 12 minutes you'll

7    be free to go to lunch, but let's wait and see if we get a

8    quick note.

9            Thanks so much.

10           (Recess pending verdict)

H53Wthi2

1          THE COURT:  Bring in the jury.

2          (Jury present)

3          THE COURT:  Ladies and gentlemen, we have received

4   your verdict sheet.  It's been marked as Court Exhibit 7.  I'm

5   going to read your verdict to you.  Please listen carefully.  I

6   will then ask each of you whether what I have read is your

7   verdict.

8          "Count One, engaged in a monetary transaction in

9   criminally derived property, in excess of $10,000, between 2009

10  and August 2011.  Guilty.

11         "Count Two, conducted money laundering in November of

12  2010.  Guilty."

13         Mr. Pichardo, is that your verdict?

14         JUROR:  Yes.

15         THE COURT:  Mr. Rosenberg, is that your verdict?

16         JUROR:  Yes.

17         THE COURT:  Ms. Stevenson, is that your verdict?

18         JUROR:  Yes.

19         THE COURT:  Mr. Black, is that your verdict?

20         JUROR:  Yes.

21         THE COURT:  Ms. Morris, is that your verdict?

22         JUROR:  Yes.

23         THE COURT:  Ms. Nkrumah-Peprah, is that your verdict?

24         JUROR:  Yes.

25         THE COURT:  Ms. Riloquio, is that your verdict?

1              JUROR:  Yes.

2              THE COURT:  Ms. Thompson, is that your verdict?

3              JUROR:  Yes, your Honor.

4              THE COURT:  Ms. Schiff, is that your verdict?

5              JUROR:  Yes.

6              THE COURT:  Mr. Melrose, is that your verdict?

7              JUROR:  Yes.

8              THE COURT:  Ms. Peckoo, is that your verdict?

9              JUROR:  Yes.

10             THE COURT:  Ms. Roig, is that your verdict?

11             JUROR:  Yes.

12             THE COURT:  Counsel, is there any reason why I cannot

13     now excuse this jury?

14             MR. KOBRE:  No, your Honor.

15             MR. GOLDSMITH:  No, your Honor.

16             THE COURT:  Ladies and gentlemen, I'm not going to

17     comment on your verdict; that's for you, and you have done your

18     duty as jurors by deliberating and returning a verdict, but I

19     do want to extend my thanks for your participation in jury

20     service in this courthouse.  Obviously you've seen how

21     important it is.  It is how our system of justice works.  If

22     citizens aren't willing to spend their time, come here, be

23     here, listen carefully to the evidence and deliberate together,

24     trials can't be conducted and tried under the system of justice

25     that we've adopted in our country, so for that I thank you.  I

H53Wthi2

 1    think you've seen how important jury service is.  It's a great

 2    duty but also a great honor of citizenship in this country, so

 3    thank you.

 4            Now, you are released from your obligation not to

 5    discuss the case.  You may choose to discuss it or choose not

 6    to discuss it with whomever you would like, your decision

 7    entirely.  I have one request.  If you choose to discuss the

 8    case, feel free to share your own views, but keep what others

 9    said to you in the confidence of the jury room a confidence for

10    them to share or not to share.  Let them make their own

11    decisions separately whether they want to share their thoughts.

12    It's just a request, but I think it makes a lot of sense

13    probably to all of you.

14            With that, you are excused.  Ms. Rojas will give you

15    instructions in the jury room.

16            (Jury excused)

17            THE COURT:  Counsel, I'm going to schedule sentence

18    for August 4 unless that date is inconvenient for one party or

19    the other, and that will make defense submissions due July 21,

20    government's response due July 28.  Can counsel consult with

21    each other in advance, well in advance, of sentencing so if

22    there are any issues with respect to forfeiture we can get

23    those addressed in a timely fashion so sentence could be

24    complete on August 4.  It will be August 4 at 11 a.m.

25            MR. KOBRE:  Yes, Judge.

1          MR. GOLDSMITH:  Your Honor, I'd also like to request

2     an extension of the deadline for Rule 33 motion to four weeks.

3          THE COURT:  OK.  Your posttrial motion, if any, will

4     be due May 31, government's response June 16.

5          MR. GOLDSMITH:  Thank you.

6          MR. KOBRE:  Your Honor, if I might ask?

7          THE COURT:  Yes.

8          MR. KOBRE:  And I apologize, because I know the Court

9     has already set the schedule.  The sentencing date would be

10    difficult for one of the government attorneys to attend.  Would

11    it be possible for sentencing to be just the following week?

12         THE COURT:  Let me ask you, Mr. Goldsmith.  Does

13    August 11 work for you?

14         MR. GOLDSMITH:  August 11 will be fine.

15         THE COURT:  I'll get you a time on August 11 in a

16    moment.  Let me change, then, the dates for sentencing

17    submissions.  Defense submissions would be due July 28 and the

18    government's submission would be due August 4.

19         MR. KOBRE:  Thank you, Judge.

20         THE DEPUTY CLERK:  August 11 at 10 a.m. for

21    sentencing.

22         THE COURT:  Mr. Kobre, anything else we need to do?

23         MR. KOBRE:  No, your Honor.

24         THE COURT:  Mr. Goldsmith.

25         MR. GOLDSMITH:  No, your Honor.

H53Wthi2

1        THE COURT:  Thank you.

2            (Adjourned)